**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| GEORGE M. YANICK, ) | |
| ) | CASE NO.   1:08-cv-1494 |
| Plaintiff, ) | |
| ) | |
| v. ) | MAGISTRATE JUDGE VECCHIARELLI |
| ) | |
| MICHAEL J. ASTRUE, ) | |
|   Commissioner of Social Security, ) | **MEMORANDUM OF OPINION** |
| ) | |
| Defendant. ) | |

This case is before the magistrate judge by the consent of the parties. Plaintiff, George M Yanick ("Yanick"), challenges the final decision of the Commissioner of Social Security ("Commissioner"), denying Yanick's application for Supplemental Security Income ("SSI") prior to September 23, 2005 under Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 423 and 1381(a).  This court has jurisdiction pursuant to 42 U.S.C. § 405(g).

For the reasons set forth below, the decision of the Commissioner is REVERSED and the case REMANDED for further proceedings consistent with this opinion.

I.  Procedural History

Yanick filed an application for SSI on November 20, 2002.  His  application was denied initially and upon reconsideration.  Yanick timely requested an administrative hearing.

Administrative Law Judge Brenton L. Rogozen ("ALJ Brenton") held a hearing on

August 16, 2005. Yanick, represented by counsel, testified on his own behalf at the hearing. Kevin Ye testified as a vocational expert. ALJ Brenton issued a decision on September 23, 2005 in which he determined that Yanick was disabled as of September 23, 2005 but that, prior to that date, Yanick retained the residual functional capacity ("RFC") to perform a range of light work and that there had been a sufficient number of jobs in the national economy that Yanick could perform. ALJ Brenton concluded, therefore, that Yanick had not been disabled prior to September 23, 2005. Yanick requested a review of ALJ Brenton's decision by the Appeals Council. On May 21, 2007, the Appeals Council remanded the case for further review on the matter of disability prior to September 23, 2005.

ALJ Mark Carissimi ("ALJ Carissimi") held a hearing on September 19, 2007. Yanick, represented by counsel, testified on his own behalf at the hearing. Mark Anderson testified as a vocational expert ("VE"), and Melvin Ross testified as a medical expert. On November 29, 2007, ALJ Carissimi issued an opinion finding that Yanick had the ability to do a range of light work from November 20, 2002 through September 22, 2005 and that there had been a significant number of jobs in the national economy that he had been able to perform. For these reasons, ALJ Carissimi found that Yanick had not been disabled prior to September 23, 2005. Yanick timely requested a review of ALJ Carissimi's decision by the Appeals Council. On April 23, 2008, ALJ Carissimi's decision became the decision of the Commissioner when the Appeals Council affirmed the decision of the ALJ and declined further review.

Yanick filed an appeal to this court on June 20, 2008. Yanick alleges that ALJ Carissimi erred because there was not substantial evidence to support his findings that (1)

Yanick had no significant limitations in his right arm between November 20, 2002 and September 22, 2005 and (2) there were a sufficient number of full-time jobs that Yanick could perform at that time. The Commissioner denies that the ALJ erred.

## II. Evidence

Yanick and the Commissioner disagree only about whether Yanick was disabled prior to September 23, 2005. This disagreement focuses exclusively on whether ALJ Carissimi erred in not finding that Yanick was limited in the use of his right arm between November 20, 2002 and September 22, 2005 and whether ALJ Carissimi had sufficient evidence to support his finding that there were a sufficient number of jobs in the national economy that Yanick could perform at that time. For these reasons, the court will only examine evidence relevant to those two issues prior to September 23, 2005.

*A. Personal and Vocational Evidence*

Yanick was born on September 23, 1950 and was 56 years old at the time of his second hearing. He has a high school degree and has not worked since 1981. He has, therefore, no past relevant work experience.

*B. Medical Evidence*

James Raia, Ph.D., examined Yanick for the Bureau of Disability Determination ("the Bureau") on February 11, 2003. Transcript ("Tr."), pp. 131-34. Yanick said that he had been "nervous" ever since the night his wife committed suicide in 1981. When he gets nervous, he becomes short of breath, his hands shake, and his heart beats faster. Yanick reported that his memory was good but that his neck and back were painful, his toes tingled all the time, and his fingertips were sometimes numb.

Darshan Mahajan, M.D., examined Yanick on March 18, 2005. Tr. at 174-76.

Yanick reported numbness and tingling in his fingertips and toes. Dr. Mahajan found that Yanick's right hand was swollen, and Yanick told him that he had hit with that hand in frustration. Dr. Mahajan also found decreased muscle mass in the hands and feet, especially in the left hand and arm, which had been deformed since Yanick's birth. Deep tendon reflexes were also markedly decreased. Left hand muscles were weak, but power and coordination were relatively well-maintained in the other muscle groups despite the loss of muscle mass. Pinprick and temperature tests revealed decreased sensation below the mid-upper arms. Dr. Mahajan found that proprioception, graphesthesias, and stereognosis were mildly depressed in all limbs. His diagnosis included idiopathic peripheral neuropathy, a possible right hand fracture, and deformity of the left elbow with a weakness in the left hand muscles. Dr. Mahajan prescribed, *inter alia*, physical therapy.

Yanick first reported for physical therapy to address the pain and numbness in his extremities on March 25, 2005. Tr. at 198-99. His therapist advised a treatment for two times a week for eight weeks. Yanick attended four sessions, only two of which included treatment. He then stopped attended physical therapy.

Yanick underwent an EMG on April 6, 2005 upon Dr. Mahajan's order. The EMG detected moderate denervation changes in the muscles of the left arm, mild denervation changes in the left C7 root distribution, and denervation changes in the small muscles of the hands bilaterally. Dr. Mahajan interpreted the EMG to show changes of left brachial plexopathy with accompaniment of left C7 radiculopathy and idiopathic peripheral neuropathy, possibly caused by exposure to toxins. The doctor noted Yanick's past history of alcohol abuse.

On August 8, 2005, Yanick's primary care physician, Jessica Griggs, D.O., examined

Yanick. Tr. at 285. Yanick complained of numbness in his fingers and toes that had come and gone for the past two years. The doctor detected no clubbing, cyanosis, or edema in the extremities. Dr. Griggs detected atrophy in both hands. Yanick's upper left arm was smaller than the right, but his grip strength in his left hand was 4/5. The doctor diagnosed Yanick as suffering from chest pain, hypertension, and neck and back pain.

Yanick underwent an EMG study of his extremities on June 28, 2006. Tr. at 292-93. The tests revealed sensory and motor neuropathy affecting many nerves in the upper and lower extremities but particularly affecting the common peroneal nerve of the left leg.

C.  *Hearing testimony*

At the hearing on August 16, 2005, Yanick testified that he was right-handed and had 50% less strength in his left hand than in his right hand. Tr. at 317. He also testified regarding nerve deficits in both hands:

> Q   Do you ever drop things?
>
> A   Yes.
>
> Q   Which hand do you drop things?
>
> A   Both.
>
> Q   Do you know why you drop things with your right hand?
>
> A   Because the feeling, if I grab something with my whole hand I won't but with like from the first joint in the arm and my fingers there's hardly no feeling.

Tr. at 325. He also testified that he was able to tie his shoes with both hands. Tr. at 326.

At the hearing on September 19, 2007, the VE testified regarding the number of jobs available in the national economy that Yanick could perform. Tr. at 372-83. The VE testified that Yanick could perform the jobs of Laboratory Sample Care, Mail Sorter, and

5

Cane Spray Inspector and that these jobs collectively totaled 425,000 jobs nationally, 13,500 jobs in Ohio, and 4,800 in northeast Ohio. The VE conceded that some of those jobs would be part-time jobs, but he was unable to say how many jobs would be full-time jobs. Tr. at 376. Finally, the VE opined that of the sedentary jobs that Yanick would otherwise be able to perform, he would be unable to perform more than 75% percent of them because of limitations in his upper extremities. Tr. at 381.

### III.  Standard for Disability

A claimant is entitled to receive benefits under the Act when he establishes disability within the meaning of the Act. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981). A claimant is considered disabled when he cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a). To receive SSI benefits, a recipient must also meet certain income and resource limitations. 20 C.F.R. §§ 416.1100 and 416.1201.

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process. First, the claimant must demonstrate that he is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, the claimant must show that he suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, the claimant is presumed to be disabled

6

regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000). Fourth, if the claimant's impairment does not prevent him from doing her past relevant work, the claimant is not disabled. For the fifth and final step, even if the claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). At the fifth step, the burden is on the Commissioner to demonstrate "that other work exists in significant numbers in the national economy that you can do, given your residual functional capacity and vocational factors." 20 CFR § 404.1560(c)(2).

### IV.  Summary of Commissioner's Decision

In relevant part, ALJ Carissimi made the following findings:

1. The claimant did not engage in substantial gainful work activity from November 20, 2002 through September 22, 2005.

2. From November 20, 2002 through September 22, 2005, the claimant had the following severe combination of impairments: alcohol abuse, dysthymic disorder, social phobias, state/post left arm injury with ankylosis, idiopathic peripheral neuropathy, and lumbar degenerative joint disease (20 CFR 416.920(c)).

3. From November 20, 2002 through September 22, 2005, the claimant's impairments, including substance abuse disorders, met sections 12.04 and 12.09 of 20 CFR Part 404, Subpart B, Appendix 1 (20 CFR 416.920(d)).

4. From November 20, 2002 through September 22, 2005, if the claimant stopped the substance abuse, the remaining limitations would cause more than a minimal impact on the claimant's ability to perform basic work activities; therefore, the claimant would continue to have a severe impairment or combination of impairments.

5. From November 20, 2002 through September 22, 2005, if the claimant stopped the substance abuse, the claimant would not have an impairment or combination of impairments that meets or medically equals any of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR

>   416.920(d)).
>
> 6. If the claimant stopped the substance abuse, the claimant would have the residual functional capacity to perform light work except that he could only occasionally reach, handle, finger, and feel with the left extremity (the non-dominant extremity). He could perform simple routine tasks. He could have superficial interaction with co-workers and supervisors. He could have occasional interaction with the public without negotiation or confrontation.
>
> 7. The claimant has no past relevant work (20 CFR 416.965).
>
> 8. The claimant was born on September 23, 1950 and was 52 years old, which is defined as an individual closely approaching advanced age, on the date the application was filed (20 CFR 416.963).
>
> 9. The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).
>
> 10. Transferability of job skills is not an issue because the claimant does not have past relevant work.
>
> 11. For the period of November 20, 2002 through September 22, 2005, if the claimant stopped the substance abuse, considering the claimant's age, education, work experience, and residual functional capacity, there would be a significant number of jobs in the national economy that the claimant could perform (20 CFR 416.960(c) and 416.966).
>
> 12. For the period of November 20, 2002 through September 22, 2005, because the claimant would not be disabled if he stopped the substance abuse (20 CFR 416.920(g)), the claimant's substance abuse disorders is [sic] a contributing factor material to the determination of disability (20 CFR 416.935). Thus, the claimant has not been disabled within the meaning of the Social Security Act at any time from the date the application was filed through September 22, 2005.

Tr. at 20-29.

In finding that a significant number of jobs in the national economy that Yanick could perform, ALJ Carissimi wrote as follows:

> To determine the extent of erosion of the unskilled light occupational base caused by the limitations that would remain, I asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education work experience, and the residual functional capacity the claimant would have if he

> stopped the substance abuse. The vocational expert testified that given all of these factors, the individual would be able to perform the requirements of representative occupations such as : Laboratory Sample Carrier (DOT 922687054 light and unskilled) of which there are 125,000 jobs nationwide[,] 15,000 statewide, and 2,500 locally (Northeast Ohio); Mail Sorter (DOT 209687026) of which there are 175,000 jobs nationwide, 4,500 statewide, and 1,500 locally; and Finish Inspector (DOT 741687010 light[,] unskilled) of which there are 125,000 nationwide, 6,500 statewide, and 800 locally.

Tr. at 29.

## V. Standard of Review

This Court's review is limited to determining whether there is substantial evidence in the record to support the administrative law judge's findings of fact and whether the correct legal standards were applied. *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). Substantial evidence has been defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also Richardson v. Perales*, 402 U.S. 389 (1971).

## VI. Analysis

Yanick alleges that the ALJ erred because there was not substantial evidence to support his findings that (1) Yanick had no significant limitations in his right arm between November 20, 2002 and September 22, 2005 and (2) there were a sufficient number of full-time jobs that Yanick could perform at that time.

*A. Whether the ALJ erred in failing to find that Yanick was significantly limited in the use of his right hand*

Yanick argues that evidence in the record requires the conclusion that Yanick was limited in the use of his right hand between November 20, 2002 and September 22, 2005. He cites in support of this contention Yanick's subjective complaints of numbness and tingling in his extremities; Dr. Mahajan's observed decreased muscle mass in both hands, weakness in both wrists, decreased sensation in the lower arms, and decreased deep tendon reflexes; and an EMG-based diagnosis of peripheral neuropathy bilaterally. Yanick also points out that although ALJ Carissimi listed idiopathic peripheral neuropathy to be a severe impairment, he did not identify any limitations following from this impairment.

In finding that Yanick was limited in the use of his left hand and arm but not his right, ALJ Carissimi wrote as follows:

> I find that all other alleged impairments and impairments mentioned in the documentary record, including right hand fracture [and] degenerative joint disease of the right wrist . . . are not "severe" impairments either because they have not significantly interfered (and are not expected to interfere) with Mr. Yanick's ability to engage in basic work activities for any continuous 12-month period from the alleged onset date through the date last insured or because there is insufficient or no objective medical evidence to substantiate the alleged impairments through the date of this decision.

Tr. at 21. The ALJ also noted that Dr. Mahajan found that power and coordination in Yanick's right hand was well-maintained. The ALJ opined that Yanick's peripheral neuropathy was probably caused by his alcohol abuse and noted that there was no evidence that the reported pain and numbness in his arms interfered with his activities of daily living. Tr. at 27. Moreover, ALJ Carissimi observed that Yanick had failed to complete his physical therapy regimen addressing his pain and numbness. *Id.*

In sum, given the ALJ's consideration of all the evidence in the record related to

10

Yanick's capabilities with his right hand and given the evidence for and against imposing some limitations on Yanick's use of his right hand, substantial evidence supports the ALJ's conclusion that Yanick is not significantly limited in the use of his right hand.  Yanick's arguments to the contrary are not well-taken.

*B.     Whether the ALJ erred in finding that there were a sufficient number of full-time jobs for Yanick to perform*

Yanick argues that ALJ Carissimi's use of the grids to determine whether Yanick was disabled required him to determine the number of jobs that Yanick was able to perform and that the ALJ failed to do so properly.  The Commissioner contends that that ALJ properly determined the number of jobs in the national economy that Yanick could perform.

When a claimant has both exertional and non-exertional limitations, the ALJ must first determine whether the claimant "can meet the primary strength requirements of sedentary, light, or medium work . . . ."  Social Security Ruling 83-14, 1983-1991 Soc. Sec. Rep. Serv. 41, 1983 WL 31254 ("SSR 83-14"), at *2.  The ALJ must then determine the effect of the non-exertional limitations on the potential occupational base.  In determining what remains of the occupational base, the ALJ must consider "the rule(s) reflecting the individual's maximum residual strength capabilities, age, education, and work experience . . . [and] all of the relevant facts in the case in accordance with the definitions and discussions of each factor in the appropriate sections of the regulations . . . ."  *Id.* at *3.  "Where it is clear that additional limitations or restrictions have significantly eroded the exertional job base . . . , the remaining portion of the job base will guide the decision."  *Id.* at *6.

The effects of certain non-exertional limitations must be considered very carefully

11

when those limitations are combined with a light exertional level:

> Unlike unskilled sedentary work, many unskilled light jobs do not entail fine use of the fingers. Rather, they require gross use of the hands to grasp, hold, and turn objects. Any limitation on these functional abilities must be considered very carefully to determine its impact on the size of the remaining occupational base of a person who is otherwise found functionally capable of light work.

SSR 83-14 at *5. Moreover, when the ALJ uses a VE and determines that a claimant is not disabled, the ALJ's decision must include "(1) citations of examples of occupations/jobs the person can do functionally and vocationally and (2) a statement of the incidence of such work in the region in which the individual resides or in several regions of the country." *Id.* at *6.

Yanick has both exertional and non-exertional limitations. He is limited to light work and is limited in his ability to engage in bilateral manipulation and tolerate certain workplace stresses. An inability to engage in normal bilateral manipulation and an inability to tolerate workplace stress are non-exertional limitations. *Id.* at *1. Yanick's limitations on his ability to manipulate objects bilaterally, as the VE noted, eliminates from his occupational base more than 75% of the sedentary occupations that he would otherwise be capable of performing as an individual capable of light work. Yanick contends that the drastic erosion of the number of sedentary jobs that he might perform, combined with the elimination of some unknown number of part-time jobs from the occupations the VE cited as performable by Yanick, potentially reduces his occupational base so severely that there may not be a significant number of jobs in the national economy that Yanick can perform.

Yanick attempted to raise this issue at the hearing, and the ALJ limited his ability to question the VE on the erosion of the number of sedentary jobs that Yanick might otherwise be able to perform. The ALJ did not question the VE regarding the number of

12

full-time jobs performable by Yanick at the light work level nor about the number of sedentary jobs that Yanick might be able to perform. Thus, any conclusion as to the number of full-time jobs available is speculative. In writing his decision, the ALJ cited as performable by Yanick the full number of Laboratory Sample Care, Mail Sorter, and Cane Spray Inspector jobs cited by the VE as existing in the national and local economies. The ALJ did not acknowledge that these numbers or the number of sedentary jobs performable by Yanick were reduced in any way. Consequently. the ALJ failed to determine properly the effects of Yanick's non-exertional limitations on his potential occupational base, as required by SSR 83-14. As the size of Yanick's potential occupational base should have been the primary factor guiding the ALJ's decision, the failure to determine properly the size of Yanick's occupational base means that the ALJ's decision was not supported by substantial evidence.

This case must be remanded to the ALJ for a proper determination of Yanick's remaining occupational base. The ALJ must ask the VE to estimate the number of full-time or part-time jobs representing substantial gainful employment[1] that were performable by Yanick between November 20, 2002 and September 22, 2005. The ALJ must then determine whether, given Yanick's total occupational base, work existed for Yanick in significant numbers in the national economy between November 20, 2002 and September 22, 2005. From this determination, the ALJ must decide if Yanick was disabled during this period.

---

[1] A number of factors are used to determine whether a job constitutes substantial gainful employment. Primarily, such a job must provide an income of at least $940 per month. *See Weaver v. Astrue,* 2008 WL 2402246, at *11 n.24 (D. Minn. June 10, 2008).

VII.  Decision

For the reasons given above, the court REVERSES the decision of the Commissioner and REMANDS the case for proceedings consistent with this opinion.

**IT IS SO ORDERED.**


Date:  February 20, 2009　　　　　　　s/ Nancy A. Vecchiarelli
　　　　　　　　　　　　　　　　　　　U.S. Magistrate Judge